UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

RICKY D. CAVANAUGH,

    Plaintiff,

    vs.                                                                       Civil Action No. 10-C-56

OSHKOSH CORPORATION,

    Defendant.

## DECISION AND ORDER

Plaintiff Ricky Cavanaugh brought this action alleging violations under the Age Discrimination in Employment Act of 1967 (ADEA) and the Wisconsin Fair Employment Act (WFA) against Oshkosh Corporation, his former employer. Cavanaugh alleges in his complaint that he was subjected to disparate treatment and ultimately terminated from his employment because of his age. The case is now before the Court on Oshkosh's motion for summary judgment. For the reasons given below, Oshkosh's motion will be granted.

**I. Background**

Oshkosh builds and reconditions military and commercial trucks. Cavanaugh worked at Oshkosh since 1985. In the five years prior to his discharge, Cavanaugh worked in Oshkosh's Airport Rescue and Firefighting (ARFF) department. The ARFF department is contained within Oshkosh's North Plant, and Cavanaugh's job responsibilities, for the most part, were within the ARFF department. He worked as a cab assembler, building subassemblies for truck cabs, which

were necessary to keep the assembly line moving. In early 2007, Oshkosh and the ARFF department were working at capacity to meet its customer delivery commitments.

Cavanaugh also served as a steward for the union that represented Oshkosh workers during two separate periods of his employment. He served as a union steward for a two-and-a-half year period in the late 1980s and early 1990s, and resumed that role in December, 2006 or January, 2007. As a union steward, Cavanaugh was required to attend disciplinary meetings involving member employees. When Cavanaugh was working on the assembly line, he was punched in on company time. When he worked on union business, he punched over to track his time as non-productive labor.

Matt Kufel became Cavanaugh's supervisor in late 2006 or early 2007. On February 8, 2007, Kufel ordered Cavanaugh to not leave the ARFF department while on company time and to not leave on union business without permission. The union filed a grievance on Cavanaugh's behalf over the incident, and it was later resolved.

In March 2007, Oshkosh implemented a policy prohibiting assembly line workers from sitting in office chairs at their work stations. To replace the office chairs, Kufel and his supervisor, Shawn Chartier, offered mechanics stools. Oshkosh's stated goals for the change were to increase productivity and create a more aesthetically pleasing shop floor to help impress visiting potential clients. Cavanaugh claims he was never told the reason for the new policy, and that, in his view, mechanic's chairs were less safe and decreased productivity. At the time, Cavanaugh attributed the change to his activities as a union steward, not his age.

On March 16, 2007, Kufel intended to deliver a verbal warning to Oshkosh employee and union member Jeff Martinez. Kufel asked Cavanaugh, in his capacity as a union steward, to retrieve Jeff Martinez and report to Kufel's office. Cavanaugh retrieved Martinez and Todd Livieri,

2

another union steward, and reported to Kufel's office. After the brief meeting in Kufel's office, Cavanaugh, Livieri, and Martinez went Cavanaugh's work station to discuss what had taken place at the meeting. Cavenaugh took notes as the men talked. While they were still talking, Kufel approached and stated, "I need you guys to go back to work." (Def.'s PFOF ¶ 49.) Cavanaugh replied that he was writing his notes. Livieri and Martinez returned to their work stations. A short time later, Kufel again told Cavanaugh to get back to work, and Cavanaugh repeated that he was writing his notes. Kufel stated that he would be watching Cavanaugh, and Cavanaugh replied that he should "go ahead." (Def.'s PFOF ¶ 54.)

At some point, Cavanaugh finished writing notes about Martinez's discipline and began writing notes about what he perceived to be Kufe1's harassment of him. When Kufel noticed that Cavanaugh was still taking notes and had not returned to work, Kufel discussed the situation with Chartier, Jim Romme, who was Director of Manufacturing, and Rod Wedemeier, Senior Director of Human Resources. Wedemeier instructed Kufel to warn Cavanaugh about the consequences of his actions and give him a final chance to go back to work. Kufel and Chartier approached Cavanaugh, told him to punch over to company time, and warned him that his actions constituted insubordination and grounds for suspension and termination. Cavanaugh admits Kufel and Chartier approached him, but claims the only words he heard were "suspension" and "termination." (Pl.'s Resp. to Def.'s PFOF ¶ 60.) As Cavanaugh continued to write his notes, Matt Kufel grabbed Cavanaugh's badge and informed him he would be escorted from the North plant. Cavanaugh was then suspended and subsequently informed that his employment had been terminated for insubordination.

Cavanaugh filed a grievance over his termination, but an arbitrator concluded that the Company had just cause to terminate him for insubordination. (Aff. of Joe Wilson, Ex. 19, doc. 21-

3

19.) Cavanaugh also filed a complaint with the EEOC, claiming age and retaliatory discrimination. A right to sue letter was issued, and he commenced this action.

**II. Analysis**

    **A.    Summary Judgment Standard**

Summary judgment is proper if the record demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. No genuine issue of material fact exists if a plaintiff has failed to make a showing sufficient to establish an essential element that he must prove at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). In the employment discrimination context, summary judgment is proper where the plaintiff "could [not] persuade a reasonable jury that the employer had discriminated against the plaintiff." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1570 (7th Cir. 1989).

**1.    Age Discrimination Claim Under the ADEA**

A plaintiff who is claiming age discrimination under the ADEA can either proceed using direct method or indirect method. *Martino v. MCI,* 574 F.3d 447, 452 (7th Cir. 2009). Cavanaugh admits that no one at Oshkosh ever said anything to him about his age and is proceeding under the indirect method. To establish a prima facie case, a plaintiff must prove: "(1) he is a member of a protected class… (2) his performance met the company's legitimate expectations; (3) despite his performance he was subject to an adverse employment action… and (4) the company treated similarly situated employees under 40 more favorably." *Id.* at 453. If the plaintiff satisfies these criteria, the company may provide a legitimate, nondiscriminatory reason for the termination. *Id.* If the employer offers such a reason, the plaintiff may challenge the stated reason as a pretext for

discrimination. *Id.* The ultimate burden to prove intentional discrimination, however, always remains with the plaintiff. *Id.*

### a. Cavanaugh can not persuade a reasonable jury that his performance met the company's legitimate expectations at the time of his termination.

Under the ADEA, a plaintiff must show that he met the legitimate expectations of his employer at the time of his termination. *Martino,* 574 F.3d at 452. Characterizing Cavanaugh's conduct that resulted in his termination as a text book example of insubordination, Oshkosh argues that his conduct obviously did not meet the company's legitimate expectations. Oshkosh contends that the undisputed evidence establishes that Cavanaugh willfully disregarded his employer's instruction communicated through his supervisor Kufel that he return to work. The collective bargaining agreement between the Company and the Union lists "directing or engaging in insubordination" and "failure or refusal to carry out specific instructions" as "serious behavior violations" that will result in immediate discharge. (Def.'s PFOF ¶ 77.) Given the undisputed evidence that Kufel went to Cavanaugh's work station on three separate occasions and directed him to return to work, and that Cavanaugh disregarded Kufel's instruction on each occasion, Oshkosh contends Cavanaugh cannot establish that he met his employer's legitimate expectations.

Cavanaugh argues, however, that there is no evidence that Kufel ever instructed him to return to work or to stop writing his notes. Instead, he argues, the evidence viewed in the light most favorable to him establishes only that on two occasions minutes apart Kufel told him, "I need you to get back to work," to which Cavanaugh responded simply that he was writing his notes from the meeting. Cavanaugh claims that he was never expressly told to stop writing and he never stated that he would return to work when he was finished. On the third occasion, Cavanaugh claims Kufel merely said "I'm watching you," to which Cavanaugh responded "go ahead." And on the fourth

occasion when Kufel approached his work station, Cavanaugh states that he heard Kufel say something about suspension or termination but that he immediately confiscated Cavanaugh's badge. This evidence, Cavanaugh argues, is not enough to demonstrate insubordination.

Cavanaugh's argument is not a serious one. Given the circumstances and series of events, no reasonable employee would have taken Kufel's statement as anything other than an order to go back to work. His repeated failure to do so, coupled with his continued writing, constitutes a clear and unequivocal refusal to comply with Kufel's order. Such conduct does not meet the legitimate expectations of an employer. Accordingly, Cavanaugh is unable to establish the first element of his claim.

**b.    Oshkosh did not subject Cavanaugh to an adverse employment action prior to his dismissal.**

Cavanaugh also argues that the discrimination was manifested not just in his termination, but in previous adverse employment actions taken against him. Oshkosh has conceded that Cavanaugh was living up to its legitimate expectations at the time these actions were taken, but it argues its actions were not "adverse employment actions" within the meaning of the ADEA.

The Seventh Circuit has examined what an adverse employment action is:

…for purposes of Title VII, there are three general categories of actionable, materially adverse employment actions: (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment.

*Nagle v. Village of Calumet Park,* 554 F.3d 1106, 1116 (7th Cir. 2009) (citations omitted). The court has given further guidance stating: "not everything that makes an employee unhappy is an actionable adverse action." *Id.*

Cavanaugh claims that when Oshkosh refused to allow him to sit in an office chair at his workstation and offered a mechanic's stool as a substitute, it constituted an adverse employment action. He also claims that restricting him from leaving the ARFF department while on company time is was an adverse employment action. Cavanaugh portrays these events as creating a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration to his work environment. His claim is clearly exaggerated, however. The type of chair one sits in is a *de minimis* job condition. This does not rise to the level of a severely hostile workplace. Furthermore, there are few workplaces in the world where the employees agree with every one of their employers' policies. To show an adverse action, it is not enough for an employee to second-guess the business rationale for various employment rules or show that he was inconvenienced by them. The employee must actually be subject to materially adverse conditions – e.g., cold or heat, extended hours, or humiliation.

Nor do these restrictions constitute evidence of animus against Cavanaugh on account of his age. Cavanaugh kept notes relating to the events he alleges constitute adverse employment actions. Nowhere in his notes does he suggest that he considered the chair or ARFF department restrictions to be related to his age. His notes reflect instead his concern that the restrictions might have been related to his activities as a union steward. In any event, the conduct alleged does not rise to the level of an adverse condition of employment.

**c.  Cavanaugh failed to allege facts to support a claim that Oshkosh treated similarly situated employees who were under 40 years old differently than he was treated.**

7

Even if Cavanaugh could establish that he was meeting his employer's expectations and that the pre-termination actions Oshkosh took constituted adverse employment actions, he would fail the fourth prong of the analysis because he cannot show that Oshkosh treated similarly situated younger employees any better.

The Seventh Circuit has defined "substantially younger" to mean at least ten years younger. *Kariotis v. Navistar Int'l Transp. Corp.,* 131 F.3d 672, 676 n.1 (7th Cir. 1997). And to be similarly situated for comparison purposes, the other employee must be "similarly situated with respect to performance, qualifications, and conduct." *Radue v. Kimberly-Clark Corp*. 219 F.3d 612, 617 (7th Cir. 2000) (citations omitted). A difference in supervisors can also prevent another employee from being considered similarly situated. *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 395 (7th Cir. 2010).

As comparator employees, Cavanaugh cites other union stewards at Oshkosh. Most are not substantially younger, and only two who were under 40 years old were ever told to stop taking notes. Both complied with the directive after only one request. Cavanaugh, by contrast, refused to stop writing notes and return to work despite at least three separate visits to his work station by his supervisor after he had been told to do so. Cavanaugh and his cited comparison employees' conduct do not match. This difference, as well as others relating to changes in company policy regarding discipline and identity of the supervisor, disqualifies them from being considered similarly situated. Other comparator evidence offered by Cavanaugh is simply inadmissible as hearsay, and need not be considered. *See* Kuborn Affidavit, Exhibits 23 and 24.

Cavanaugh further argues that two other employees were allowed to use office chairs rather than being forced to use mechanic's stools, and that this constituted different treatment of similarly situated employees. The other employees that Cavanaugh points to were not substantially younger,

8

however. One was 50 years old, and the other was 43. The record establishes that Cavanaugh was treated differently from these two other employees, but the age of those other employees undermines any notion that the different treatment was a product of age discrimination.

In sum, Cavanaugh cannot make out a prima facie case of age discrimination under the ADEA. Cavanaugh was over 40 years old at the time he was dismissed (he was 52). However, his refusal to return to work despite repeated requests from his supervisor did not meet Oshkosh's expectations, and he fails to show otherwise. Substituting a stool for an office chair and restricting Cavanaugh to the building that his workstation is located in while he was on company time were not adverse employment actions; he failed to show that those restrictions subjected him to an unsafe, unhealthful, or humiliating workplace. Lastly, he fails to provide evidence of similarly situated younger employees who were treated differently than he was.

### III. Conclusion

Even taking the facts in the light most favorable to Cavanaugh, he cannot make out a prima facie case of age discrimination under the ADEA. For this reason, Oshkosh's motion for summary judgment shall be granted and his claims against Oshkosh are dismissed. The Clerk is directed to enter judgment in favor of Oshkosh forthwith.

**SO ORDERED** this ___7th___ day of April, 2011.

                                           s/ William C. Griesbach
                                           William C. Griesbach
                                           United States District Judge